ORIGINAL

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

REBECCA A. PERLMUTTER
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Rebecca.Perlmutter@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00101 HG |
| | ) | |
| Plaintiff, | ) | FIRST SUPERSEDING |
| | ) | INDICTMENT |
| vs. | ) | |
| | ) | [18 U.S.C. §§ 1341, 1343, 1512(b)(3), |
| NEIL KAUHI and         (01) | ) | 1957] |
| LYNDIE KAUHI,          (02) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST SUPERSEDING INDICTMENT

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

At all times relevant to the First Superseding Indictment:

1.     NEIL KAUHI ("N. KAUHI") and LYNDIE KAUHI ("L. KAUHI"), the defendants, were husband and wife. They formerly resided in Oahu, Hawaii, located within the District of Hawaii, until in or around November 2017. Thereafter, N. KAUHI and L. KAUHI moved to Oregon.

## COUNTS 1-20
Wire and Mail Fraud
(18 U.S.C. §§ 1343 and 1341)

2.     The introductory allegations in paragraph 1 are hereby incorporated as if fully set forth herein.

## THE SCHEME AND ARTIFICE TO DEFRAUD

3.     From an earlier date unknown, but by at least in or around October 2012, continuing through a date unknown to the Grand Jury, but at least through in or around April 2018, within the District of Hawaii and elsewhere, NEIL KAUHI, the defendant, did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material facts, well knowing at the time that such pretenses, representations, and promises would be and were false when made. As part of the scheme to defraud:

4.     N. KAUHI made materially false representations and promises involving purported investments in precious metals, real estate, a trucking company, and a solar energy company, among other investments. In total,

...
...
...

according to N. Kauhi's own statements, N. Kauhi took in more than $2.2 million in funds from at least 17 investors. N. KAUHI knew that these investments would not all be directed into the purported investments as promised, but instead N. KAUHI and L. KAUHI spent almost all of these investment funds on their personal expenses, including for travel, rent and utilities, restaraunts, personal vehicles, retail purchases, entertainment, their daughter's wedding, and on returning funds to other victim-investors and other unauthorized uses.

     5.     To induce victim-investors to provide N. KAUHI with funds to invest, N. KAUHI represented to these individuals that he was wealthy and successful in numerous business ventures, when in fact he knew at the time that was not true because N. KAUHI was only living off of other people's investments as part of the scheme to defraud and did not have any personal wealth or other sources of income. For example, N. KAUHI represented to several victim-investors that he owned hundreds of homes, rental properties, and tracts of land in Oregon and Hawaii and elsewhere, when in fact he knew at the time that he did not own these things. Specifically, N. KAUHI falsely represented to S.T. and others that N. KAUHI owned his luxury home in Kapolei-Makakilo, Hawaii, when he actually rented it and paid for it by diverting and misusing other victim-investors' funds.

## Acquiring Victim-Investors' Funds

6.      In furtherance of the scheme to defraud, N. KAUHI inquired about any sources of funds that victim-investors had access to, such as life insurance proceeds, inheritance, retirement accounts, and home equity, among other sources.

*Self-Directed Individual Retirement Accounts*

7.      For N. KAUHI and his family members to obtain the funds from several victim-investors, N. KAUHI directed these individuals to set up self-directed individual retirement accounts ("IRAs") with companies that offered these financial products.  A self-directed IRA is a financial account for retirement that allows an individual to control their funds and invest monies into non-traditional investments.  The account holder could not withdraw funds prior to retirement for disallowed uses, such as personal expenses, or the account holder would incur monetary penalties, fees, and tax consequences.  After the victim-investors set up the self-directed IRAs, N. KAUHI directed these individuals to transfer their traditional retirement account balances and other funds into the self-directed IRAs.

8.      To induce some victim-investors to set up self-directed IRAs, N. KAUHI falsely represented that N. KAUHI used and had his personal funds in self-directed IRAs, which was in part how N. KAUHI became wealthy, when in fact he knew that was not true.

9. To induce these victim-investors to provide funds to N. KAUHI and his family members and to release funds from the self-directed IRA accounts for investments, N. KAUHI executed and signed promissory notes that assured a financial return of principal plus interest within a specified time period. On at least one of these promissory notes, L. KAUHI signed as a witness.

10. N. KAUHI also executed promissory notes for other parts of the scheme. For example, N. KAUHI did not pay back victim-investors and failed to comply with the terms of the notes. In some instances, N. KAUHI made material misrepresentations about the status of the investments and provided victim-investors with additional promissory notes to extend the financial terms or acquire additional funds, when in fact he knew at the time that the victim-investors' funds were already spent on unauthorized expenses, including his and his family's personal expenses.

*Home Equity Lines of Credit (HELOCs)*

11. To induce the victim-investors to provide funds to N. KAUHI and his family members for investments, N. KAUHI directed several victim-investors to apply for HELOCs. A HELOC is a loan using real property as collateral to borrow funds up to a certain dollar amount. After the HELOCs were approved and the funds became available to the victim-investors, N. KAUHI directed the victim-investors to transfer the funds to N. KAUHI and his family members.

**False Statements to Victim-Investors About the Investigation**

12. Special Agents of the Federal Bureau of Investigation (FBI) formally informed N. KAUHI and L. KAUHI that they were targets of a federal investigation for fraud in or around early November 2017, in Oahu, Hawaii. On November 6, 2017, N. KAUHI was interviewed voluntarily by Special Agents of the FBI. In or around mid-November 2017, after the interview, N. KAUHI moved to Oregon.

13. Thereafter, in furtherance of the scheme to defraud, N. KAUHI made false and misleading statements to victim-investors about the investigation and the FBI to conceal the real status of the victim-investors' funds.

## THE WIRE COMMUNICATIONS

14. On or about the dates listed below, in the District of Hawaii and elsewhere, for the purpose of executing the scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, N. KAUHI did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, as described for each count listed below:

| COUNT | DATE | VICTIM-INVESTOR | WIRE COMMUNICATION |
|---|---|---|---|
| 1 | July 22, 2013 | K.K. | Deposit of a $20,000.00 cashier's check from K.K. to N. KAUHI into N. KAUHI and L. KAUHI's joint First Hawaiian Bank account ending in -9590 for an investment in precious metals |
| 2 | August 29, 2014 | P.S. | Check deposit of $100,000.00 from P.S.'s Beneficial Financial Group account ending in -0860 into P.S.'s First Hawaiian Bank account ending in -6638 for $190,000.00 real estate investment in cash through N. KAUHI |
| 3 | August 29, 2014 | P.S. | Check deposit of $100,000.00 from P.S.'s General American account ending in -9080 into P.S.'s First Hawaiian Bank account ending in -6638 for $190,000.00 real estate investment in cash through N. KAUHI |
| 4 | April 1, 2015 | D.H. | Wire transfer of $161,700.00 from D.H.'s bank in New Zealand into N. KAUHI and L. KAUHI's joint First Hawaiian Bank account ending in -9590 for a real estate investment involving a residence at 43 Rose Street, Wahiawa, Hawaii |
| 5 | October 30, 2015 | K.J. | Check deposit of $150,000.00 into L. KAUHI's First Hawaiian Bank account ending in -7828 for an investment into a trucking company |
| 6 | April 1, 2016 | V.S. | Wire transfer of $115,818.00 from V.S.'s bank in New Zealand into L. KAUHI's First Hawaiian Bank account ending in -7828 for an investment into a trucking company |
| 7 | April 18, 2016 | D.L. | Check deposit of $50,000.00 into L. KAUHI's First Hawaiian Bank account ending in -7828 for an investment into a trucking company |

| COUNT | DATE | VICTIM-INVESTOR | WIRE COMMUNICATION |
|---|---|---|---|
| 8 | April 22, 2016 | K.J. | Check deposit of $100,000.00 into L. KAUHI's First Hawaiian Bank account ending in -7828 for an investment into a trucking company |
| 9 | May 3, 2016 | D.L. | Check deposit of $50,000.00 into L. KAUHI First Hawaiian Bank account ending in -7828 for an investment into a trucking company |
| 10 | May 26, 2016 | M.S. | Wire transfer of $100,000.00 from M.S.'s self-directed IRA account into N. KAUHI and L. KAUHI's joint First Hawaiian Bank account ending in -9590 for an investment into a trucking company |
| 11 | May 31, 2016 | B.J. | Wire transfer of $110,000.00 from B.J.'s self-directed IRA account into L. KAUHI's First Hawaiian Bank account ending in -7828 for an investment into a trucking company |
| 12 | September 1, 2016 | G.B. | Wire transfer of $149,978.00 from G.B.'s bank in New Zealand into L. KAUHI's Hawaii State Federal Credit Union Bank account ending in -1743 for a real estate investment into a foreclosed property |
| 13 | October 14, 2016 | C.M. | N. KAUHI sent C.M. an email copying L. KAUHI wherein N. KAUHI discussed C.M.'s promissory note from N. KAUHI for an investment into a trucking company |
| 14 | October 26, 2016 | C.M. | Wire transfer of $70,000.00 from C.M.'s self-directed IRA account into N. KAUHI and L. KAUHI's joint Hawaii State Federal Credit Union account ending in -1743 for an investment into a trucking company |
| 15 | December 7, 2016 | D.Hy. | Wire transfer of $120,000.00 from D.Hy.'s HELOC account into N. KAUHI and L. KAUHI's Hawaii State Federal |

| COUNT | DATE | VICTIM-INVESTOR | WIRE COMMUNICATION |
|---|---|---|---|
| | | | Credit Union account ending in -1743 for an investment into a trucking company |
| 16 | December 21, 2016 | S.T. | N. KAUHI sent S.T. a text message with a photograph of an unsigned promissory note for S.T.'s $100,000.00 investment into a solar company |
| 17 | January 18, 2017 | A.F. | N. KAUHI sent A.F. text messages describing A.F.'s investments into a solar company with L. KAUHI's assistance |
| 18 | April 9, 2018 | S.T. | N. KAUHI sent S.T. an email explaining the status of S.T.'s investment in a solar company |
| 19 | April 6, 2018 | S.B. | N. KAUHI told S.B. on a telephone call that S.B.'s funds were still in gold investments in N. Kauhi's brother's Monex account |

All in violation of Title 18, United States Code, Section 1343.

## THE MAILING

15. On or about March 5, 2018, within the District of Hawaii and elsewhere, for the purpose of executing the scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, N. KAUHI did knowingly cause a mailing, as described in the count below:

| COUNT | MAILING |
|---|---|
| 20 | Promissory notes signed by N. KAUHI to victim-investors S.B. and R.B. that extended the terms of their original investments with N. KAUHI for approximately $310,000.00, and that were sent from Oregon to Hawaii using the U.S. Postal Service |

All in violation of Title 18, United States Code, Section 1341.

# COUNT 21
## Obstruction of Justice
### (18 U.S.C. § 1512(b)(3))

16. The introductory allegations in paragraph 1 and paragraphs 12 and 13 of the wire fraud counts regarding false and misleading statements to victim-investors about the investigation are hereby incorporated as if fully set forth herein.

17. On or about April 6, 2018, in the District of Hawaii and elsewhere, NEIL KAUHI, the defendant, did knowingly engage in and attempt to engage in misleading conduct toward another person with the intent to hinder, delay, and prevent the communication to federal law enforcement of truthful information relating to the commission and possible commission of a federal offense, namely mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, in that N. KAUHI told victim-investor S.B. on a telephone call that N. KAUHI was going after the FBI and that S.B. should not contact the FBI:

> S.B.: [So] if I call them [the FBI] and I say ok, listen, this is my money, this is not his [N. KAUHI's], and you guys have it . . . so I, would that do it [to get my investment funds back]?
>
> N. KAUHI: All you're doing is just hindering what I'm trying to do. I don't want anybody to do anything until we're done.

All in violation of Title 18, United States Code, Section 1512(b)(3).

## **COUNTS 22-25**
Money Laundering
(18 U.S.C. § 1957)

18. The introductory allegations in paragraph 1 are hereby incorporated as if fully set forth herein.

19. On or about the dates listed below, in the District of Hawaii and elsewhere, N. KAUHI and L. KAUHI, the defendants, did knowingly engage in monetary transactions within the United States, knowing that each such transaction involved criminally derived property with a value greater than $10,000.00, as described for each count listed below:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 22 | April 19, 2016 | $50,000.00 wire transfer from L. KAUHI's First Hawaiian Bank account ending in -7828 to J.D. and H.D.'s Bank of Hawaii account ending in -5388 for payment on N. KAUHI and L. KAUHI's Makakilo-Kapolei rental home |
| 23 | May 27, 2016 | $90,000.00 transfer from N. KAUHI and L. KAUHI's First Hawaiian Bank account ending in -9590 to L. KAUHI's First Hawaiian Bank Account ending in -7828 |
| 24 | June 2, 2016 | $20,000.00 First Hawaiian Bank official bank check no. 19282131 from payee L. KAUHI to R.B. for the purchase of two vehicles |
| 25 | January 31, 2017 | $20,000.00 Hawaii State Federal Credit Union official bank check no. 202436 from payee L. KAUHI to A.Y. for the purchase of an enclosed trailer |

All in violation of Title 18, United States Code, Section 1957, and Title 18, United States Code, Section 2.

## **FIRST FORFEITURE NOTICE**

1. The allegations contained in Counts 1-20 are incorporated by reference for the purpose of noticing forfeitures pursuant to Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to NEIL KAUHI, the defendant, that, upon conviction of the offenses charged in Counts 1-20 of this First Superseding Indictment, the government will seek forfeiture, in accordance with Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 1343 and 1341, alleged in Counts 1-20 of this First Superseding Indictment, including but not limited to:

a. Approximately $546,730.88 in funds seized on or about December 12, 2017 from escrow account #57351 held in the name of Neil K. Kauhi at Metro National Title in connection with the sale of real property located at 3931 Aspen Camp Loop, Park City, Utah;

b. Approximately $17,299.98 in funds seized on or about April 11, 2018 from escrow account #21018110428 in the name of Neil K. Kauhi at Title Guaranty Escrow Services, Inc., in connection with the sale of real property described as unit #106, 1700 Makiki Street, Honolulu, Hawaii; and

   c. Approximately $17,587.65 in funds seized on or about March 13, 2018, from escrow account #18108132 in the name of Neil K. Kauhi at Title Guaranty Escrow Services, Inc., in connection with the sale of real property described as unit #109, 1700 Makiki Street, Honolulu, Hawaii.

  3. If by any act or omission of the defendant, any of the property subject to forfeiture described in paragraph 2 herein:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America will be entitled to the forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

## SECOND FORFEITURE NOTICE

  1. The allegations contained in all paragraphs of Counts 22 through 25 of this First Superseding Indictment are hereby realleged and incorporated by

reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

2. The United States hereby gives notice to NEIL KAUHI and LYNDIE KAUHI, the defendants, that, upon conviction of the offenses charged in Counts 22 through 25 of this First Superseding Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 982(a)(1), of any and all property, real or personal, involved in that offense, and any property traceable to such property.

3. If by any act or omission of the defendants, any of the property subject to forfeiture described in paragraph 2 herein:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party,

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

DATED: June 5, 2019, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson
_____
FOREPERSON


_____
KENJI M. PRICE
United States Attorney
District of Hawaii

_____
REBECCA A. PERLMUTTER
Assistant United States Attorney

United States v. Neil Kauhi et al.
First Superseding Indictment
Cr. No. 18-00101 HG